IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL J. BEJARANO and
CHRISTINA A. BEJARANO,
individually, and as Personal Representatives
of the ESTATE OF JAZZMYN BEJARANO,

    Plaintiffs,

vs.                                                                        No. 2:12-CV-00598

AUTOZONE, AUTOZONE STORES, INC.,
and CHRIS ASHFORD,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiffs Daniel and Christine Bejarano's Motion to Remand (Docket No. 11), filed June 6, 2011, which argues that the removal of this case from state court was improper, due to a lack of diversity of citizenship existing between Plaintiffs and Defendant Chris Ashford ("Ashford"), all of whom are citizens of New Mexico. In response, Defendants Autozone, Autozone Stores, Inc. ("Autozone"), and Ashford contend that diversity jurisdiction exists because Plaintiffs cannot state a valid cause of action against Defendant Ashford, who was fraudulently joined for the purpose of defeating diversity jurisdiction. This Court, having reviewed the submissions of the parties, and being otherwise fully advised, finds that the motion to remand should be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Daniel and Cristina Bejarano ("the Bejaranos") commenced this action against Defendants AutoZone, Autozone Stores, Inc., and Ashford on March 29, 2012 in the Third Judicial District for the District of New Mexico, Cause No. D-307-CV-2012-00750 (Docket No. 1-2,

Compl.). The Plaintiffs and Defendant Ashford are all residents of New Mexico; Autozone is incorporated and has its principle place of business outside of New Mexico. (*Id*. at ¶¶ 1, 4-5). The incident at issue in this case took place outside an Autozone store in Las Cruces, New Mexico. (*Id*. at ¶ 11-12). Plaintiffs allege that Daniel Bejarano drove a motor vehicle, with Jazzmyn Bejarano as passenger, to the Autozone store in question on February 10, 2011. (*Id*.). After arriving, Jazzmyn Bejarano exited the vehicle and walked onto the sidewalk between the vehicle and the Autozone store. (*Id*. at ¶ 12). While Jazzmyn Bejarano was standing on the sidewalk, the Complaint alleges that "the 1988 motor vehicle unexpectedly moved forward onto the sidewalk and crushed Jazzmyn Bejarano between the vehicle and the Autozone building." (*Id*.). She was pronounced dead at the University Medical Center of El Paso on the same day. (*Id*. at ¶13).

At the time of the accident, Ashford was manager of the Las Cruces Autozone store, (*Id*. at ¶ 7), but the Complaint does not assert that he was present at the time of the accident. The Complaint alleges that the Defendants' negligence was the direct and proximate cause of the death of Jazzmyn Bejarano. (*Id*. at ¶ 14). The Defendants' alleged negligence consists of, but is not limited to: failure to properly maintain the parking area; failure to place appropriate barriers and curb safeguards in the parking area; failure to place a sufficient number of barrier poles; failing to warn of dangerous conditions on the premises; failure to use adequate and appropriate curbing; failure to engage in proper cost saving measure; and failure, despite having knowledge of the deficiency, to repair, complete, update and improve the parking area. (*Id*. at ¶ 15). Plaintiffs allege that all Defendants are jointly and severally liable under theories of respondeat superior, agency and joint enterprise. (*Id*.).

The Defendants filed a Notice of Removal (Docket No. 1) on June 1, 2012. The Notice contends that, pursuant to 28 U.S.C. §1332, Ashford should not be considered for purposes of

diversity jurisdiction because he was fraudulently joined. (Docket No. 1 at ¶ 5). In their June 5, 2012 Answer (Docket No. 5), Defendants deny all negligence in connection to the death of Jazzmyn Bejarano. (*Id*. at ¶¶14-17). The facts establish that the amount in controversy exceeds $75,000. (Docket No. 1 at ¶ 22).

On June 11, 2012, Plaintiffs filed a Motion to Remand (Docket No. 11), alleging that removal was improper because the claims against the non-diverse defendant, Ashford, are valid under New Mexico law. (*Id*. at ¶¶ 18-23). Further, Plaintiffs allege that Defendants "lacked an objectively reasonable basis" in seeking removal of this action, and therefore request that the court award just costs and actual expenses, including attorney's fees, incurred as a result of the removal[1]. (*Id*. at ¶ 24).

Defendants then submitted a Response to the Motion to Remand (Docket No. 13) and attached an affidavit from Ashford (Docket No. 13-1). In the affidavit, Ashford avers that, as store manager, he did not participate in the design of the store's exterior or parking area (Docket No. 13-1 at ¶ 6); he did not possess any specialized expertise, knowledge or training in parking design, warnings, bollards or traffic control (*Id*. at ¶ 7); he did not exercise any control over the parking lot's configuration (*Id*. at ¶ 8); he saw no indication that the parking lot was damaged, needed maintenance, or had any defects prior to the incident (*Id*. at ¶ 9-10); he had no authority to reconfigure or reconstruct the parking lot (*Id*. at ¶ 10); he was on break at the time of the incident and did not see Jazzmyn Bejarano, Daniel Bejarano, or the truck involved in the incident until after the incident (*Id*. at ¶ 11-12); and that, prior to the incident, he had never heard or seen a vehicle drive up onto the sidewalk, endangering or injuring a pedestrian. (*Id*. at ¶ 13).

---

[1] Because Plaintiffs' Motion to Remand has been denied, this Court will not reach the issue of attorney's fees.

Plaintiffs filed a Reply (Docket No. 14) attaching an affidavit from Daniel Bejarano (Docket No. 14-1). Bejarano avers that the parking space in which the motor vehicle was located prior to moving onto the Autozone sidewalk lacked the bollards and extra barriers that were positioned in front of some of the other parking spaces. (*Id*. at ¶ 6). Additionally, he avers that the sidewalk's curb was slanted toward the building. (*Id*.).

## II. LEGAL STANDARDS

Pursuant to 28 U.S.C. §1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000). Diversity of citizenship must be complete – i.e., there can be no plaintiff and no defendant who are citizens of the same State. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *see also Randil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004). At the time of removal, Defendants concede that Ashford and the Bejaranos are all citizens of New Mexico, but contend that the case is still removable because Ashford was fraudulently joined as a Defendant for the purposes of defeating diversity jurisdiction.

### A. Fraudulent Joinder

Generally, whether a case is removable or not is determined by the original pleadings; a statement of a cause of action against the non-diverse defendant will usually be sufficient to prevent removal. *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). However, if fraudulent joinder is specifically alleged, the court may pierce the pleadings and consider the entire record to determine the basis of joinder by any means available. *Id*.; *See also Nerad v. AstraZeneca Pharms.,*

4

*Inc.*, 203 Fed. Appx. 911, 913 (10th Cir. 2006) (unpublished opinion).[2] In *Nerad*, the Tenth Circuit held that, where fraudulent joinder is claimed, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Id.*; citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000).

The removing party has the burden of demonstrating the existence of federal jurisdiction by a preponderance of the evidence. *Karnes v. Boeing Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003). "The case law places a heavy burden on the party asserting fraudulent joinder." *Montano v. Allstate Indemnity Co.*, 211 F.3d 1278 (Table), 2000 WL 525592 at *1(10th Cir. 2000)(unpublished opinion). That burden is met with clear and convincing evidence of fraudulent joinder. *See Smith v. Blockbuster Entertainment Corp.*, 100 F.3d 878, 880 (10th Cir. 1996). All disputed questions of fact and ambiguities in the controlling law must be resolved in favor of the non-removing party. *Hart v. Bayer Corp* 199 F.3d 239, 246 (5th Cir. 2000)(citations omitted)(quoted in *Montano*, 2000 WL 525592 at *1). *See also Couch v. Astec Indus., Inc.*, 71 F.Supp.2d 1145, 1146-47 (D.N.M. 1999) ("To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty."(citing *McLeod v. Cities Service Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956))).

If there is a possibility that a state court would find the plaintiff's complaint states a cause of action against the non-diverse defendant, the federal court must find that joinder was proper and remand the case to state court. *Couch*, 71 F. Supp. 2d at 1147 (citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Moreover, "a claim that can be dismissed only after an

---

[2]The Tenth Circuit Rule 32.1(A) states that unpublished cases "may be cited for their persuasive value." U.S. Ct. of App. 10th Cir. Rule 32.1. Unlike Fed. R. App. P. 32.1, which the 10th Circuit Rule references, the Tenth Circuit Rule applies to cases published prior to January 1, 2007, as well as after. Therefore, citation to the unpublished cases herein is permissible due to their persuasive value.

intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff v. State Farm Ins. Co.*, 977 F.3d 848, 853 (3d Cir. 1992)(quoted in *Montano*, 2000 WL 525592 at *2).

### B. State Law of Liability

It is a general principle of New Mexico law that "every person has a duty to exercise ordinary care for the safety of the person and property of others." NMRA, Civ. UJI 13-1604 (2011). It is also well established that an agent may be held individually liable for his own tortious acts, regardless of whether the principle is liable. *See Stinson v. Berry*, 123 N.M. 482, 487 (Ct. App. 1997), citing Restatement (Second) of Agency § 350 (1958); *see also Kreischer v. Armijo*, 118 N.M. 671, 673 (Ct. App. 1994). These principles are clear, but it is also clear that an individual's duty to exercise ordinary care exists "under the circumstances according to the standard of conduct imposed upon [him] by the circumstances." *Calkins v. The Cox Estates*, 110 N.M. 59, 63 (1990). "In deciding whether ordinary care has been used, the conduct in question must be considered in the light of all surrounding circumstances." NMRA, Civ. UJI 13-1603 (2011).

The New Mexico Supreme Court has held that "officers or employees of corporations can be held personally liable when they commit intentional torts." *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 437 (1994). *See also Stinson v. Berry,* 123 N.M. at 487 (New Mexico Court of Appeals holding that directors engaging in tortious conduct may be held liable if they are acting within the scope of corporate duties). However, corporate directors and officers are not liable for the corporation's torts merely by virtue of the office they hold; only "if the officer or director directed, controlled, approved or ratified the activity that led to the injury, [can] he or she be held personally liable." *Id*. at 486.

In *Klopp v. Wackenhut Corp.*, the New Mexico Supreme Court stated that "the liability of an employee or agent for injuries caused by dangerous conditions on occupied premises is directly related to actual control over the premises." *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 161 (1992). In *Klopp*, the plaintiff was injured when she tripped over the stanchion base of a metal detector at an airport security station. *Id.* at 155. The security station was operated by an independent security agency under contract with the airline, which provided, owned, and positioned all necessary equipment. *Id.* at 160. The security agency had no authority to alter the configuration or placement of the equipment. *Id.* The court held that, as an agent of the airline that owned the security checkpoint, the security agency's duty to the plaintiff was "limited by the extent of its control over the chattels in its custody or over the area that it occupied," and that the agent was, for this reason, "relieved of liability for harm caused by the configuration of equipment that [the agent] lacked the authority to rearrange." *Id.* at 161.

In support of the proposition that an agent's liability is limited by the extent to which it exerts actual control over a premises, the Court finds *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir.1958) instructive. In *Lobato*, the Tenth Circuit upheld the denial of remand in an action for personal injuries resulting from the sale of a defective bicycle, where the plaintiff brought suit against the manager and employees of the drug store where the bicycle was sold. The court notes that "merely being an . . . agent of a corporation does not render one personally liable for a tortious act of the corporation." *Id.* at 409. On the contrary, the Court held that

> "[s]pecific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation."

*Id*. Because the complaint did not "charge in any specific terms any specific acts on the part of the individual defendants which constituted affirmative direction, sanction, participation, or cooperation" in the sale of the defective product, and further, because it appeared from the affidavits of the individual defendants – which went unchallenged by counter-affidavits or other evidence – that they "did not personally have anything to do with the assembly and sale" of the defective product, the Tenth Circuit concluded that the district court was justified in its conclusion that the individual defendants were joined for the purposes of keeping the action in state court. *Id*.

### III. DISCUSSION

This Court must determine whether Plaintiffs have shown a reasonable basis to believe that they might succeed in at least one claim against the non-diverse defendant. In this matter, the Court finds that Plaintiffs have failed to meet the burden to show that at least one valid claim could possibly be stated against Defendant Ashford.

In the Complaint, Plaintiffs essentially allege that Defendants negligently maintained the parking area, negligently designed the parking area, and negligently failed to warn of the dangerous conditions on the premises. These claims are asserted collectively against Autozone and Ashford. A negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, and the breach being the proximate cause and cause in fact of the plaintiff's damages. *Spencer v. Health Force, Inc.*, 137 N.M. 64, 70 (2005). Under New Mexico law, although officers or employees of corporations can be held personally liable when they commit intentional torts (*Bourgeous*, 117 N.M. at 437), they are not liable for the corporation's torts merely by virtue of the position they hold. *Stinson*, 123 N.M. at 486. Rather, they are liable only if they directed, controlled, approved, or ratified the activity that led to the injury. *Id*. An agent or employee's liability for dangerous conditions on premises he occupies is "directly related to actual control over

the premises." *Klopp*, 113 N.M. 153, 161 (1992). More clearly, an agent or employee is relieved of liability for harm caused by dangerous conditions which he did not have the authority to alter. *Id*. Ashford's liability for dangerous conditions at the Las Cruces Autozone is limited accordingly.

According to his affidavit, Ashford's authority over the exterior of the store was limited to "reporting and having repaired any damage to objects in the parking lot." (Docket No. 13-1 at ¶ 10). Ashford saw no indication that the parking lot was poorly maintained or that there was any damage to objects in the parking lot prior to the accident. (*Id*. at ¶¶ 9-10). Ashford avers that the parking striping, placement of bollards, sidewalk curbing, and parking bumpers were in the same position and configuration when he began working at the store as they were on the day of the accident. (*Id*. at ¶ 4).

Plaintiffs claim that the parking lot was negligently designed in a number of ways. In hisaffidavit, Daniel Bejarano avers that the space in which the motor vehicle was parked lacked extra parking bumpers and bollards that existed in some of the other spaces, and that the sidewalk curbing was slanted toward the building. While these facts may add weight to a negligent design claim against Autozone, they do not change the fact that Plaintiffs have not alleged a single instance of damage or defect on the premises which Ashford had the expertise to detect or authority to correct. Ashford was charged with reporting and having repaired any damage to objects in the parking lot, not with installing bollards or curbing or reviewing the configuration bollards or curbing for potential design defects. Ashford simply had no authority over the configuration of objects in the parking lot. Ashford cannot be held liable for negligent design, when he had no design authority.

Although Plaintiffs alleged no specific damage to the exterior of the store related to the accident, Plaintiffs allege that Ashford can, nonetheless, still be liable for negligent maintenance. In support of this proposition, Plaintiffs point to a unreported New Mexico District Court opinion

9

from Judge Brack that is easily distinguished from the instant case. (Docket No. 11, ¶ 20)(citing *Austin v. Wal-Mart Stores, Inc.*, No. Civ 06-0492 RB/RHS, Memorandum Opinion and Order, slip op. at 4-5 (D.N.M. 2006)). In *Austin*, the court found a reasonable basis to believe a valid claim might be stated against the store manager after all factual ambiguities were resolved in favor of the plaintiff. While the *Austin* court faced factual ambiguity concerning the authority of store managers over the clean-up of potential spills – as a form of maintenance – in our case, there is no such ambiguity concerning Ashford's authority over design and maintenance. It is important to note that because spills are commonplace and comparatively easy to detect, it takes no special knowledge or training to know that spills can cause accidents or to detect and correct these problems. Conversely, the configuration and design of a parking lot is altogether more complex. A defect in design would likely be invisible to the lay man not equipped with an architecture, engineering, or other similar background. Had the issue in this case been a spill, rather than parking lot configuration, Ashford might face potential liability. As it is, however, Ashford's duty to exercise reasonable care for the safety of others does not expose him to liability for alleged design defects, because Ashford had no training, experience, knowledge, or authority to identify and alter defects in the parking lot's design.

Plaintiffs also attempt to equate the placement of warning signs with maintenance activities under New Mexico law. In both of the cases that Plaintiffs cite, the defects which defendants failed to warn of were open and obvious to the defendants – a cable that defendants erected over a road and a roadway maintained by defendants that periodically flooded. *O'Brien v. Middle Rio Grande Conservancy Dist.*, 94 N.M. 562, 564 (Ct. App. 1980); *Rutherford v. Chaves County*, 133 N.M. 756, 759 (2003). The holdings of the *O'Brien* and *Rutherford* opinions are not sufficiently on point to override the controlling principle stated in *Klopp*: an agent or employee's liability for dangerous conditions on premises he occupies is "directly related to actual control over the premises." *Klopp*,

10

113 N.M. 153, 161 (1992). Ashford did not direct, control, approve, or ratify the placement or misplacement of any warning signs and, therefore, under the rule stated in *Stinson*, cannot face liability for any negligence in connection with the activity. *Stinson*, 123 N.M. at 486.

Accordingly, resolving all disputed facts and ambiguities in the law in favor of the Plaintiffs, this Court concludes that Plaintiffs have not stated a valid cause of action against Ashford under New Mexico law. Moreover, Defendants have conclusively proven that Plaintiffs cannot possibly state a valid cause of action against Ashford in relation to the death of Jazzmyn Bejarano with clear and convincing evidence. In accord with this opinion, Defendant Ashford will be dismissed with prejudice from this matter, absent an as yet unraised and compelling justification not to dismiss filed with this Court within 15 days.

**WHEREFORE**

**IT IS ORDERED** that Plaintiffs' Motion to Remand (Docket No. 11), filed June 6, 2012 is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE